1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

KARL K. KEONE, an individual,                    Case No. C13-419RSM

11                Plaintiff,                      ORDER ON CROSS MOTIONS FOR
                                                  SUMMARY JUDGMENT
12        v.

13   UNITED STATES OF AMERICA,

14                Defendant.

15

16        THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment

17   (Dkt. # 20) and Plaintiff's cross Motion for Partial Summary Judgment (Dkt. # 22). Having

18   considered the parties' memoranda, supporting declarations and exhibits, and the remainder of

19   the record, the Court denies Defendant's motion for summary judgment and grants partial

20   summary judgment in favor of Plaintiff on the issue of liability for the reasons stated herein.

21                                      **BACKGROUND**

22

23        This action arises from a motor vehicle accident involving Plaintiff, Karl Keone, and

24   United States Postal Service ("USPS") driver Stacey Christian, occuring at the intersection of

25   West Marginal Place and 27th Avenue South in Tukwila, Washington on August 19, 2011. At the

26   time of the collision, Keone was returning from Sea-Tac International Airport in his girlfriend's

27

28

1991 Nissan when he exited Northbound SR 599 at West Marginal Place and South 102nd Street at approximately 7:30am. Dkt. # 23, Ex. 3 (Christian Dep.), p. 20; Dkt. # 1 (Compl.), ¶ 5; Dkt. # 9 (Answer), ¶ 5. At the same time, Christian was returning to the USPS distribution center, roughly one block south of the intersection, at the close of his usual graveyard shift. *Id.* Christian was traveling on South 102nd Street toward the intersection with West Marginal Place on his right and 27th Avenue South on his left.[1] It is undisputed that Christian struck Keone's vehicle, which was traveling straight through the intersection from the SR 599 off ramp onto South 102nd Street, as Christian attempted a lefthand turn onto 27th Avenue South. Dkt. # 20, p. 3; Compl., ¶ 9.

As Christian approached the intersection of South 102nd Street and 27th Avenue South, his traffic signal was red. Dkt. # 21, Ex. D (Christian Dep.), p. 24. He was nearly at a complete stop when the signal turned green, at which point he spotted Keone's vehicle exiting the freeway with his left turn signal activated. *Id.* at p. 26. Christian testified that he believed that Keone intended to turn left onto West Marginal Place, though he could not recall Keone actually initiating a lefthand turn at the intersection. *Id.* at pp. 26, 32. As Christian began to execute his lefthand turn, he saw Keone starting to come through the intersection looking to the left onto West Marginal Place with his left turn signal still lighted. *Id.* at p. 31. Christian applied the brakes when he realized that Keone was not executing a lefthand turn and was instead heading straight through the intersection. Though Christian estimates that his speed was only 10 miles per hour, he was unable to avoid the accident. *Id.* at p. 34.

---

[1] West Marginal Place becomes 27th Avenue South as it crosses the intersection with South 102nd Street. *See* Dkt. # 21, Ex. 2.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT — 2

Keone testified that he had activated his left turn signal in order to signal his switch from a right-turn-only lane on the righthand side of the exit ramp into a combination straight/left-turn lane on the lefthand side of the exit ramp. Dkt. # 21, Ex. A (Keone Dep.), p. 16. Keone estimated his speed at approximately 35 miles per hour as he entered the intersection. *Id*. Keone recalled briefly looking to a Highway 99 sign on his left as he entered the intersection. *Id.* at pp. 20-21. He looked back just in time to collide with Christian's USPS truck and did not apply his brakes before making contact. *Id.* Keone testified that Christian had not activated his left turn signal and that Keone accordingly believed that Christian intended to proceed straight through the intersection. *Id.* at p. 17. Christian, by contrast, testified that he had activated his left turn signal prior to arriving at the traffic light. Christian Dep. at p. 25.

It is undisputed that Keone and Christian were the only two witnesses to the accident. Tukwila Police Officer Gary Leavitt arrived at the accident scene at 7:35am, approximately two minutes after the collision, and took oral statements from both drivers. Leavitt prepared a Traffic Collision Report based on these interviews and issued citations to Keone for failing to yield the right of way and for driving with a suspended license. *See* Dkt. # 21, Ex's. B-C. Christian also called his supervisor, Daronda Lowe, who spoke with the drivers and prepared a standard USPS Motor Vehicle Accident Report and Accident Investigation Worksheet. *Id.* at Ex. E.

Plaintiff brings this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), seeking to recover for the alleged negligence of Christian while acting within the scope of his federal employment. Defendant filed a counterclaim asserting that the accident was instead caused by Plaintiff's negligence and that Keone is therefore liable for damages incurred by Christian. The Court has since granted the parties' stipulated dismissal of the United States' counterclaim. Dkt. # 19. The parties now seek to resolve Plaintiff's negligence claim through the

instant cross motions for summary judgment. Defendant seeks dismissal of Plaintiff's Complaint in its entirety with prejudice (Dkt. # 20), while Plaintiff seeks the Court's ruling in his favor as to liability, reserving the issue of damages for trial (Dkt. # 22).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) permits parties to move for summary judgment on all or part of their claims. Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those that may affect the outcome of the suit under governing law. *Id*. at 248. An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In ruling on a motion for summary judgment, the court does "not weigh the evidence or determine the truth of the matter but only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco*, 41 F.3d 547, 549 (internal citations omitted).

The moving party bears the initial burden of production and the ultimate burden of persuasion. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The moving party must initially establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party defeats a motion for summary judgment if she "produces enough evidence to create a genuine issue of material fact." *Nissan Fire*, 969 F.2d at 1103. By contrast, the moving party is entitled to summary judgment where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof" at trial. *Celotex*, 477 U.S. at 322. Assertions of fact must be supported by citation to materials in the record, such as depositions, affidavits, or declarations. Fed. R. Civ. P. 56(c)(1). "[T]he inferences to be drawn

1  from the underlying facts…must be viewed in the light most favorable to the party opposing the

2  motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However,

3  conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat

4  summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F.3d 337, 345

5  (9th Cir. 1995).

6                                                    **ANALYSIS**

7    **A.  Motions to Strike**

8        As an initial matter, the Court considers Plaintiff's Motion to Strike certain materials

9  relied on by Defendant in support of its request for summary judgment. Dkt. # 24, pp. 11-17. In

10  ruling on a summary judgment motion, the Court is restricted to considering evidence that is

11  admissible. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). A party may

12  object that material cited to support or dispute a fact is inadmissible in evidence. Fed. R. Civ. P.

13  56(c)(2). "The burden is on the proponent to show that the material is admissible as presented or

14  to explain the admissible form that is anticipated." Advisory Committee Notes, 2010

15  Amendments to Subdivision (c).

16        Plaintiff first seeks to exclude as inadmissible hearsay the Police Traffic Collision Report

17  and citations written by Tukwila Police Department Officer Leavitt (Dkt. # 21, Ex. B) and the

18  traffic accident report of Daronda Lowe (*Id.* at Ex. D). Hearsay is defined as a statement that "the

19  declarant does not make while testifying at the current trial or hearing" and which "a party offers

20  in evidence to prove the truth of the matter asserted in the statement." FRE 801(c). Hearsay is

21  inadmissible unless it is defined as non-hearsay under Federal Rule of Evidence 801(d), it falls

22  within a delineated exception under the Federal Rules of Evidence, or a federal statute or rule

23  prescribed by the Supreme Court provides otherwise. FRE 802; *Orr*, 285 F.3d at 778.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT — 5

The Court agrees with Plaintiff that Exhibits B and D constitute inadmissible hearsay for the purpose of Defendant's summary judgment motion. In the cited portions of Leavitt's report and declaration, Leavitt states that Keone told him that he had intended to turn northbound on West Marginal Place and initiated this turn before changing his mind. Leavitt Dep. at p. 12. These materials are offered to prove the truth of the matter asserted as to Keone's actions and intentions are therefore inadmissible hearsay. Leavitt's report is additionally subject to exclusion under RCW 46.52.080, which specifically renders inadmissible such required accident reports for use in evidence in any trial. *See* RCW 46.52.080 ("No such accident report or copy thereof shall be used in evidence in any trial, civil or criminal, arising out of an accident…."). Lowe's declaration and report are similarly inadmissible, as they are offered solely to prove the truth of the matter asserted in Keone's statements regarding his intention to turn left. *See* Dkt. # 20, p. 9.[2] The fact of Leavitt's traffic citations, and his opinion on Plaintiff's negligence implied therein, is also inadmissible, as it improperly injects the officer's opinion "involv[ing] the very matter to be determined by the jury." *Warren v. Hart*, 71 Wash.2d 512, 514, 429 P.2d 873 (1967) (en banc), citing *Billington v. Schaal*, 42 Wash.2d 878, 882 (1953).[3] All of these materials shall be stricken pursuant to Federal Rule of Civil Procedure 56(c)(2) and shall not be considered for the purpose of summary judgment.

Plaintiff's request to strike the expert report by John Hunter (Dkt. # 21, Ex. F) presents a more difficult matter. Hunter is an accredited collision reconstructionist whose report documents his findings and opinions drawn from a simulation of the collision. Plaintiff does not object to Hunter's general qualifications but nonetheless asks the Court to strike Hunter's report under

---

[2] Defendant fails to carry its burden to show that the declaration and reports of Lowe and Leavitt are admissible on other grounds, such as through a Rule 803 exception to the rule against hearsay.

[3] Defendant also fails to show that Keone's citation for driving with a suspended license has any relevance to his negligence claim. This citation is additionally excluded as irrelevant under Federal Rule of Evidence 402.

Federal Rule of Evidence 702 on the grounds that it is not based on sufficient facts or data and is not the product of reliable principles and methods.

Rule 702 of the Federal Rules of Evidence provides that expert testimony is admissible "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." The district court's role as a gatekeeper "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is…valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.,* 409 U.S. 579, 592-93 (1993). "This duty to act as a gatekeeper and to assure the reliability of proffered expert testimony before admitting it applies to all (not just scientific) expert testimony." *Samuels v. Holland America Line-USA Inc.*, 656 F.3d 948, 952 (9th Cir. 2011)(internal citations and quotations omitted). The word "knowledge" in this context "connotes more than subjective belief or unsupported speculation." *Id.*, citing *Daubert*, 509 U.S. at 590. The court's inquiry under Rule 702 is a "flexible" one, and the court tailors its choice and application of the *Daubert* factors to the "nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (internal quotation omitted); *see also*, *Samuels*, 656 F.3d at 952.

The Court does not agree that Hunter's report need be stricken in its entirety. The majority of the report consists of detailed descriptions of the crash site and conditions, the likely speed of the vehicles, and the sequence of events based on the testimony of the drivers and data about their vehicles. In general, the Court finds the reported results of the collision simulation to be sufficiently reliable to be admissible with respect to the pending motions and that Plaintiff's concerns about gaps in Hunter's analysis – such as his failure to measure Keone's physiological reaction time – go to the weight of this evidence rather than its admissibility. The Court,

however, agrees with Plaintiff that certain statements in the report must be stricken. First, the diagram of the collision drawn from Leavitt's Collision Report and contained on page 2 of Hunter's report shall be stricken, as the Court has already deemed it to be inadmissible hearsay. In addition, the Court does not find Hunter to be qualified to opine about questions of law and further finds his conclusion that "crossing a solid white lane line…is prohibited" to be factually unsupported. The Court accordingly strikes this last sentence at the conclusion of the first paragraph of page 4 of the report. Finally, the Court agrees with Plaintiff that Hunter is not permitted to offer opinions that embrace ultimate conclusions as to the liability of the parties and accordingly strikes Hunter's statements about proximate causation on page 6 of his report.

## B. Liability for Negligence

The FTCA holds the United States Government vicariously liable for negligent acts and omission of its employees while performing their duties in the course and scope of their employment. 28 U.S.C. 1346(b). Negligence is to be determined "in accordance with the law of the place where the act or omission occurred." *Id.*; *see also* 28 U.S.C. § 2675 ("The United States shall be liable…in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."). It is undisputed that Christian was acting within the scope and course of his Government employment when the subject collision occurred and that Washington law applies with respect to liability.

In order to recover for negligence, Keone has the burden to show that (1) Christian owed him a duty, (2) Christian breached that duty, (3) an injury resulted, and (4) the breach was the proximate cause of the injury. *Lowman v. Wilbur*, 178 Wn.2d 165, 169, 309 P.3d 387 (2013), citing *Crowe v. Gaston*, 134 Wash.2d 509, 514 (1998). Under Washington law, all drivers

possess a duty to exercise ordinary care while operating a motor vehicle. *Robison v. Simard*, 57 Wash.2d 850, 851, 360 P.2d 153 (1961). A statute may also impose a duty additional to the duty to exercise ordinary care, the violation of which constitutes negligence. *Mathis v. Ammons*, 84 Wash.App. 411, 416, 928 P.2d 431 (1996).

Here, this additional duty is set forth by RCW 46.61.185, which provides that "the driver of a vehicle intending to turn left within an intersection…shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard." Under this statute, Christian, as the "disfavored driver," has a duty to yield the right-of-way to Keone, the "favored driver." *See Mossman v. Rowley*, 154 Wash.App. 735, 741, 229 P.3d 812 (2009) ("The primary duty to avoid a collision is on the disfavored driver."); *Yakoyama v. Anderson*, 105 Wash.App. 1007, *1 (2001).

Defendant attempts to flip the negligence analysis on its head by arguing that Keone, despite being the favored driver, was negligent in violating his duty of care to obey traffic control devices when he switched lanes on the SR 599 off ramp prior to entering the subject intersection. Defendant points to RCW 46.61.050(1) as the source of this duty. *See* RCWC 46.61.050(1) (providing that the driver of any vehicle "shall obey the instructions of any official traffic control device applicable thereto"). Defendant's argument is misplaced on several grounds. First, Defendant offers no authority beyond Hunter's stricken opinion for the proposition that the "solid white line" crossed by Keone is a traffic control device contemplated under the statute. As Plaintiff points out, Washington law instead merely "discourage[s]" crossing solid white lane line markings prior to entering an intersection. *Manual on Uniform Traffic Control Devices* ("MUTDC"), U.S. DOT Highway Division, § 3.B.20 ("Where crossing the lane line markings is discouraged, the lane line markings shall consist of a normal or wide

solid white line.").[4] Second, Defendant does not argue, nonetheless carry his burden to show, that Plaintiff's crossing of the solid white lane line proximately caused the collision. To the contrary, Christian's execution of a left turn served as an intervening cause. Further, Christian's principle duty to yield the right of way under RCW 46.61.185 does not hinge on whether Keone was proceeding lawfully. *See State v. Carty*, 27 Wn.App. 715, 718, 620 P.2d 137 (Wash. App. 1980) (RCW 46.61.185 "contains no requirement that the State prove an oncoming vehicle was proceeding lawfully."); *Hammel v. Rife*, 37 Wash.App. 577, 583, 682 P.2d 949 (excessive speed does not overcome ordinary duty to yield the right of way).

Though not framed in such terms, Defendant's argument is best understood as an appeal to "deception doctrine." "[D]eception doctrine developed in order to cushion the harsh effects of the negligence per se doctrine as applied to collision resulting from left turns at or between intersections." *Hammel*, 37 Wash.App. at 582. It is "applicable only where the favored driver has by some wrongful driving conduct deceived a reasonably prudent disfavored driver into believing that he or she can make a left turn with a fair margin of safety." *Id.* It has been applied in two situations: (1) where the disfavored driver sees the favored vehicle and is deceived by its driver's actions, and (2) where an obstruction conceals the favored driver from prudent view (the "clear stretch of road" scenario). *Id.*, citing *Oliver v. Harvey*, 31 Wash.App. 279, 283-84, 640 P.2d 1087, *review denied*, 97 Wash.2d 1020 (1982). There is no legal deception where the disfavored driver "sees the favored driver only an instant before the collision." *Id.* Excessive speed alone is insufficient to submit the issue of deception to the jury. *Tobias v.* Rainwater, 71 Wn.2d 845, 853, 431 P.2d 156 (1967). Overall, application of the doctrine is "limited to those

---

[4] *See* WAC § 468-95-010 (providing that the MUTDC has been adopted by the Washington State Secretary of Transportation).

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT — 10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

situations where the favored driver's deception is 'tantamount to an entrapment, a deception of such marked character as to lure a reasonably prudent driver to the illusion that he has a fair margin of safety in proceeding.'" *Id.* at 582, quoting *Mondor v. Rhoades*, 63 Wash.2d 159, 167, 385 P.2d 722 (1963).

Defendant fails to proffer any admissible evidence to show that the deception doctrine applies in this instance.[5] There can be no argument that Plaintiff's changing of lanes prior to entering the intersection was "tantamount to an entrapment," *id.*, particularly where it was not in violation of traffic law. *See Watts v. Dietrich*, 1 Wash.App. 141, 460 P.2d 298 (1969) (rejecting deception argument based on plaintiff's allegedly deceptive lane switching). While Defendant argues that Keone induced Christian into believing that he was turning left by beginning to initiate a left-hand turn, Defendant fails to bolster this speculative assertion. The only suggestion that Keone had initiated such a turn is contained in the stricken reports, and Christian himself admitted under oath that he could not recall Keone taking any such action. Christian Dep. at p. 32. Even if Keone did initially intend to turn onto West Marginal Place, the application of the deception doctrine turns on his actions, not his intention. Further, even if Keone entered the intersection with his left turn signal activated and his eyes to the left, these actions do not amount to the level of entrapment necessary to displace the strong right of way owed to the favored driver. *See Watts*, 1 Wash.App. at 146 ("Construing the right of way statutes, this court has many times voiced the precept that the burden of avoiding a collision at a street intersection rests not only primarily, but also heavily, on the  driver who occupies the disfavored position….").

---

[5] As Christian admitted that he saw Keone prior to entering the intersection, there can be no argument that the "clear stretch of road" scenario applies here.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT — 11

As to the remaining elements of Plaintiff's negligence claim, Defendant fails to raise material issues of fact regarding proximate causation of Plaintiff's injuries sustained in the collision. Even if Keone executed an unlawful lane-switch, Christian's subsequent turn into Keone's lane served as the immediate cause of the collision. Relatedly, Defendant fails to carry its burden to make out a prima facie affirmative defense of contributory negligence on the part of Plaintiff.[6] Under Washington law,

> "[a] favored driver is entitled to a reasonable reaction time after it becomes apparent in the exercise of due care that the disfavored driver will not yield the right-of-way. Until he has been allowed that reaction time, he is not chargeable with contributory negligence flowing from omissions or acts regarding his failure to observe or respond to the conduct of the disfavored driver."

*Poston*, 77 Wn.2d at 335 (internal citation omitted); *see also Tobias*, 71 Wash.2d at 857 ("[A]fter he becomes aware that the right of way will not be yielded, a reasonable reaction time must be allowed the favored driver to permit him, in the exercise of due care, to act.") Put differently, where a driver crosses into another's lane and thereby "create[s] an emergency situation which requires the first driver to take immediate evasive action, then if the time for taking such evasive action is too short to prevent the collision, the first driver as a matter of law cannot be held guilty of contributory negligence." *Boerner v. Lambert's Estate*, 9 Wash.Apspd. 145, 150, 510 P.2d 1157 (1973). Under these circumstances, contributory negligence of the favored driver "cannot be determined by split-second computations of time and distance." *Id.*; *Loerch v. Miller*, 150 Wash.App. 1018, *5 (Wash. App. 2009).

---

[6] Defendant's fourth affirmative defense asserts that Keone's "recovery is barred by the Washington law on comparative negligence." Answer at p. 4. As Plaintiff points out, Washington is a comparative fault state rather than a pure contributory fault state. Under RCW § 4.22.005, "any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault, but does not bar recovery." Defendant's fourth affirmative defense shall accordingly be stricken pursuant to Federal Rule of Civil Procedure 12(f). To the extent that Defendant advances a contributory negligence defense through its fifth affirmative defense, it fails to carry its burden to make a prima facie showing, as provided herein.

---

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT — 12

Washington courts routinely fail to credit a contributory negligence defense where the favored driver had only seconds to react to an emergency situation created by the disfavored driver. For instance, Division One in *Boerner* found error in instructing the jury to consider the favored driver's contributory negligence where she had under four seconds to react to the disfavored driver's execution of a left turn into her lane. *See Boerner*, 9 Wash.App. at 152. Similarly, Division Three in *Kilde*, found that plaintiffs were not contributorily negligent where they had about two seconds to react to a pickup truck turning left into the path of their car. *See Kilde v. Sorwak*, 1 Wash.App. 742, 463 P.2d 265 (1970).

In the instant case, drawing all inferences in Defendant's favor and crediting its expert's estimation that Keone was traveling between 20 to 25 miles per hour at the time of the collision, Keone had less than two seconds to react upon entering the intersection at the point that Christian began to execute his turn. *See* Dkt. # 21, Ex. F, p. 5 ("Regardless of the approach speed, the time it took the Nissan to reach the point of impact once it began to enter the intersection would have been 2 seconds or less."). This is so even if Plaintiff was negligent in looking to his left and thereby failing to spot Christian when he first began to execute his turn. Defendant's own calculations show that Plaintiff necessarily had insufficient time to take evasive action. Plaintiff is thus shielded from contributory negligence.

Plaintiff has accordingly made out a prima facie case of liability, which Defendant has failed to rebut through any admissible evidence. Defendant has also failed to carry its burden to make a prima facie showing of its affirmative defenses. Drawing all inferences in Defendant's favor, no genuine issue of material fact precludes a finding of summary judgment in Plaintiff's favor on his negligence claim.

**CONCLUSION**

For the reasons stated herein, the Court hereby ORDERS that Defendant's Motion for Summary Judgment (Dkt. # 20) is DENIED and Plaintiff's Motion for Partial Summary Judgment (Dkt. # 22) is GRANTED. The Court finds that Plaintiff is entitled to partial summary judgment as a matter of law on the issue of liability. This case shall proceed toward trial solely on the issue of damages.

Dated this 21st day of November 2014.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT — 14